UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JACKSON LAKIESHA | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-0901-B |
| | § | |
| THE BANK OF NEW YORK | § | |
| MELLON, f/k/a THE BANK OF NEW | § | |
| YORK, as Trustee for the | § | |
| Certificateholders of CWABS, Inc., | § | |
| Asset-Backed Certificates, Series 2006- | § | |
| 6, MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEMS, INC., | § | |
| GREEN TREE SERVICING LLC, | § | |
| AMERICA'S WHOLESALE LENDER, | § | |
| d/b/a COUNTRYWIDE HOME | § | |
| LOAN, INC., BANK OF AMERICA, | § | |
| N.A., and DOES 1–100, inclusive, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Green Tree Servicing LLC's ("Green Tree"), Mortgage

Electronic Registration Systems, Inc.'s ("MERS"), and the Bank of New York Mellon's ("BONY")

Motion to Dismiss for Failure to State a Claim (Doc. 9) [hereinafter "Green Tree MTD"], and

Defendants Countrywide Home Loans, Inc.'s ("Countrywide") and Bank of America, N.A.'s

("BANA") Motion to Dismiss (Docs. 16, 16-1) [hereinafter "Countrywide MTD"]. For the following

reasons, the Court **GRANTS** the Motions.

# I.

# BACKGROUND

This case originates in a foreclosure upon Plaintiff Jackson Lakiesha's[1] ("Jackson") property, located at 1116 Melrose Drive, Burleson, Texas (the "Property"). *See* Doc. 1-8, Pet. ¶¶ 7, 13. In 2006, an individual named Terry Speed[2] ("Speed") executed an Adjustable Rate Note (the "Note") in favor of America's Wholesale Lender in exchange for a loan of $149,615. Doc. 9-2, Adjustable Rate Note 1–3. That loan was secured by a Deed of Trust to the Property, signed by Speed and Jackson. Doc. 9-2, Deed of Trust 4–15. The Deed of Trust named MERS as a beneficiary and as a nominee for "lender and Lender's successors and assigns." *Id.* at 5. Speed later defaulted on the loan, and BONY purchased the Property at a foreclosure sale on July 1, 2014. *See* Doc. 9, Green Tree MTD ¶ 3; Doc. 9-2, Notice of Trustee's Sale 23; Doc. 9-2, Substitute Trustee's Deed 21. A Substitute Trustee's Deed was recorded in Johnson County on July 10, 2014. Doc. 9-2, Substitute Trustee's Deed 19–21.

Jackson filed this action in the 249th Judicial District Court of Johnson County on March 4, 2015. Doc. 1-6, Ex. C-2, Pl.'s Verified Original Pet. In her Amended Verified Original Petition (the "Amended Petition"), Jackson asserts several claims against Green Tree, MERS, BONY, Countrywide, and BANA, as well as "Does 1 Through 100." Doc. 1-8, Ex. C-4. These include claims

---

[1] Plaintiff's Amended Petition lists her name as "Jackson lakiesha" (lowercase in original). Doc. 1-8, Am. Pet. 2. That Petition, however, asserts that Plaintiff is the same individual who signed the Deed of Trust at issue in this case, an individual named "Lakiesha Jackson." *See* Doc. 9-2, Deed of Trust 15. To avoid confusion, the Court will simply refer to Plaintiff as "Jackson."

[2] The parties disagree about Speed's relationship to Jackson. Defendants contend that Speed is Jackson's ex-husband, but Jackson asserts that the two are still married. *Compare* Doc. 9, Green Tree MTD ¶ 2, *and* Doc. 16-1, Defs.' Mem. in Supp. 7, *with* Doc. 19, Pl.'s Resp. ¶ 7. In deciding the Motions, the Court will assume that Jackson and Speed remain married.

for "Lack of Standing," fraud in the concealment, fraud in the inducement, intentional infliction of emotional distress, slander of title, quiet title, declaratory relief, violations of the Truth in Lending Act (TILA), violations of the Real Estate Settlement Procedures Act (RESPA), and violations of the Texas Debt Collection Practices Act (TDCA). *Id.* ¶¶ 46–123. Jackson also requests that the Court set aside the substitute trustee's non-judicial foreclosure sale, cancel the Substitute Trustee's Deed, and issue a temporary restraining order, a temporary injunction, and a permanent injunction. *Id.* at 33–35.[3] Defendants removed the case to this Court on March 22, 2015. Doc. 1, Notice of Removal.

On March 30, 2015, Green Tree, MERS, and BONY filed their Motion to Dismiss, and on April 23, 2015, Countrywide and BANA followed suit. *See* Docs. 9, 16. Jackson filed a Response on May 20, 2015. Doc. 19, Pl.'s Resp. Now that all Defendants have replied, *see* Docs. 20–21, the Motions are ready for review.

## II.

## LEGAL STANDARD

In a case that has been removed from state court, the proper pleading standard to apply when deciding a motion to dismiss is that of the state from whose court the case has been removed. *Craig Penfold Props., Inc. v. Travelers Cas. Ins. Co.*, No. 14-CV-0326, 2015 WL 356885, at *2 (N.D. Tex. Jan. 28, 2015); *see also De La Hoya v. Coldwell Banker Mex., Inc.*, 125 F. App'x 533, 537 (5th Cir. 2005) (applying the Texas pleading standard on a motion to dismiss claims in a case removed from Texas state court); *Sutton v. Airsep Corp.*, No. 11-CV-2669, 2012 WL 253959, at *3 (N.D. Tex. Jan. 27, 2012) (applying state pleading standard on motion to remand because "state court plaintiffs

---

[3] The change in citation format from paragraph numbers to page numbers results from the Amended Petition's abrupt shift from numbered paragraphs to non-numbered paragraphs.

should not be required to anticipate removal to federal court"). In a case removed from a Texas state court, the Court applies the Texas pleading standard. Traditionally, Texas courts have applied a pleading standard that is more liberal than the federal pleading standard, upholding a petition as long as it provides "fair notice of the claim involved." Tex. R. Civ. P. 45(b). In March 2013, however, the Texas Supreme Court adopted Rule 91a of the Texas Rules of Civil Procedure, which provides in pertinent part:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in the law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

Tex. R. Civ. P. 91a. Though not identical to the Rule 12(b)(6) standard, the Texas Courts of Appeals have interpreted Rule 91a as essentially calling for a Rule 12(b)(6)-type analysis and have relied on the Rule 12(b)(6) case law in applying Rule 91a. *See Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. filed); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied). Accordingly, this Court will do the same.

A.      *Rule 12(b)(6) Standard*

Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S.

1229 (2000). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

B.      *Pro Se Litigants*

Prior to examining the issues before the Court, the Court notes that *pro se* litigants are expected to comply with the rules of pleading and the rules of service. *See Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam). Parties who proceed *pro se*, however, are often given more leeway than represented parties in correcting errors in pleadings and defects in service of process. *Roberts v. Orleans Parish Med. Staff*, No. Civ.A. 99-2266, 2002 WL 1022488, at *5 (E.D. La. 2002) (citing *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993)). Further, a court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). Nevertheless, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Id.*

## III.

## ANALYSIS

In their Motions, Defendants collectively assert that, because she is not a signatory, Jackson is not a party to the Note and therefore lacks standing on most of her claims. *See* Doc. 9, Green Tree MTD *passim*; Doc. 16-1, Countrywide MTD 10–13. The Court will address the standing issue as a preliminary matter before analyzing Jackson's claims individually.

A.      *Jackson's Standing to Enforce Rights Under the Note*

Under Texas law, "[s]tanding is a constitutional prerequisite to filing suit for both individuals and associations." *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007). To have standing to enforce a contract, one must be a party thereto; "generally speaking, 'a third party cannot enforce a contract if the third party benefits only incidentally from it.'" *Duque v. Wells Fargo, N.A.*, 462 S.W.3d 542, 547 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011)). That is to say, a third party may only enforce a contract if that third party is an intended beneficiary under the agreement. But "there is a presumption against conferring third-party-beneficiary status on noncontracting parties." *Lomas*, 223 S.W.3d at 306. The contracting parties' intent controls this analysis, and the "intent to confer a direct benefit upon a third party 'must be clearly and fully spelled out or enforcement by the third party must be denied.'" *Id.* (quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)). Only a donee or creditor beneficiary qualifies as "one for whose benefit a contract was made." *Id.* "A person is a donee beneficiary if the performance promised will come to him as a pure donation," whereas one is a creditor beneficiary "[i]f performance will come to satisfy a duty or legally enforceable commitment owed by the promisee." *Id.*

-6-

1.    <u>Jackson is Not a Party to the Note</u>

In her Amended Petition, Jackson repeatedly avers that she is the individual who entered into the loan agreement. *See, e.g.*, Doc. 1-8, Am. Pet. ¶¶ 16–17. But even a cursory examination of the Note reveals that this is not the case.[4] Only Speed signed the Note, and nowhere does it indicate that Jackson is a party to the agreement. Doc. 9-2, Note 1–3. On the first page of the Note, there are initials other than Speed's that resemble the letters "L.J." *Id.* at 1. Even if these initials are Jackson's, however, they have been crossed out. They also do not appear anywhere else in the Note, even though Speed was required to initial again. *See id.* at 2. If anything, then, this struck-through initialing suggests that Jackson (or whoever else might have made the marks) was *not* intended to be a party to the Note.

The fact that Jackson signed the Deed of Trust does not change this conclusion. As she points out in her response to the Motions, Texas is a community property state. Doc. 19, Pl.'s Resp. ¶ 9. If both Jackson and Speed owned the Property, then Speed would not be entitled to encumber Jackson's interest without her consent, no matter whether the loan was for her benefit or not. *See* Tex. Family Code § 3.102(c); *Williams v. Portland State Bank*, 514 S.W.2d 124, 126 (Tex. App.—Beaumont 1974, writ dism'd) (interpreting the predecessor to § 3.102). It does not follow, therefore, from the fact that Jackson signed the Deed of Trust that she is also a party to the Note.

---

[4] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). All Defendants attached the Note and the Deed of Trust to their respective Motions, and Jackson's Amended Petition is replete with references to both. Furthermore, each document is central to Jackson's claims. The Court therefore finds that the Note and Deed of Trust are part of the pleadings for the purpose of deciding these Motions. Moreover, "[t]he [C]ourt will not accept as true allegations that are contradicted . . . by other allegations or by exhibits attached to or incorporated in the pleading." *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 493 (S.D. Tex. 2003).

With no other allegations to support her assertion, the Court finds that Jackson is not a party to the Note.

### 2.  Jackson is Not a Third-Party Beneficiary of the Note

For Jackson to qualify as a third-party beneficiary of the Note, the contracting parties' "intent to confer a direct benefit upon [her] 'must be clearly and fully spelled out.'" *Lomas*, 223 S.W.3d at 306. "[T]he fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 421 (Tex. 2011). "A court will not create a third-party beneficiary contract by implication." *Duque*, 462 S.W.3d at 547.

Jackson's allegations do not support the conclusion that she was a third-party beneficiary of the Note. The Note does not mention her, and nothing in the Note or the Amended Petition indicates that Speed and America's Wholesale Lender "intended to confer a direct benefit on" Jackson. *See Sharyland*, 354 S.W.3d at 421. The Amended Petition is wholly insufficient to establish that Jackson is a creditor beneficiary, as there is no allegation that either contracting party owed her an obligation for which the loan was satisfaction. *See Garcia v. Bank of America Corp.*, 375 S.W.3d 322, 326–27 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("A party is a creditor beneficiary if no intent to make a gift appears from the contract (which would make the party a donee beneficiary), but performance will satisfy an actual or asserted duty of the promisee to the beneficiary."). Nor does the Note contain any language manifesting the parties' intent that Jackson be able to enforce it. *See id.* at 327 ("The promisee must intend that the beneficiary will have the right to enforce the contract.").

Jackson is also not a donee beneficiary. "A person is a donee beneficiary only if a donative

intent expressly or impliedly appears in the contract." *Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 543 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). "An example is a prenuptial agreement in which a prospective bride promises to execute a will to benefit her prospective husband's children from a previous marriage." *Id.* Here, the Note manifests no such donative intent, either expressly or impliedly. By all appearances, it is a run-of-the-mill promissory note whereby Speed incurred the obligation in his own name. Without any elucidation of the purpose of the loan (absent from the Amended Petition), the Court cannot conclude that Jackson was an intended beneficiary of the Note. This is especially true considering the presumption against conferring such status. *See Lomas*, 223 S.W.3d at 306.

This case resembles *Wells v. Dotson*, 261 S.W.3d 275 (Tex. App.—Tyler 2008, no pet.). In *Wells*, the plaintiff's husband entered into a lease contract with an option to purchase the subject land. *Id.* at 278. Upon the death of the landowner, the plaintiff and her husband sought to exercise the option, but the defendants, the landowner's heirs, objected and threatened to sue the executor of the landowner's estate if he conveyed the land. *Id.* at 279. On appeal from summary judgment in favor of the plaintiff and her husband, the defendants argued that the plaintiff had no standing to sue, as she was not a party to the contract. *Id.* at 284. The Texas Court of Appeals agreed, finding that the plaintiff was neither a party to nor a third-party beneficiary of the contract and, therefore, that she lacked standing to sue to enforce it. *Id.* at 284–85. At most, the summary judgment evidence established that, at the time of contracting, "she and [her husband] were married for twenty years and that she was present when the agreement was signed." *Id.* at 285. This tenuous connection to the contract did not make the plaintiff either a party to the contract or a third-party beneficiary thereof. *Id.*

The pleadings in this case establish much the same facts: Jackson is not a party to the agreement, and, at best, the Note shows that she was married to Speed and present at the time he signed the contract. As in *Wells*, however, such allegations are insufficient as a matter of law to support the conclusion that Jackson was a third-party beneficiary of the Note. Accordingly, because Jackson is neither a party to the Note, nor a third-party beneficiary of it, the Court finds that she lacks standing to enforce rights under the Note.

B.    *Jackson's Claims*

Having decided that Jackson does not have standing to enforce rights under the Note, the Court will now assess the viability of her claims in light of that decision, as well as Defendants' other arguments for dismissal.

1.    Lack of Standing (to Foreclose)

In her first cause of action, Jackson argues that "Respondents, and each of them, do not have the right to foreclose on the Property." Doc. 1-8, Am. Pet. ¶ 47. It is immediately apparent from this allegation that it can only be directed toward those parties who have *claimed* the right to foreclose on the Property. Jackson has not identified which Defendants initiated the foreclosure, but the Notice of Trustee's Sale, included as part of the Substitute Trustee's Deed (the "Trustee's Deed"),[5] names BONY as the Noteholder and Green Tree as the Mortgage Servicer (i.e., the foreclosing parties). Doc. 17, Exh. D, Substitute Trustee's Deed 5. This accords with Countrywide's and BANA's argument that they were not involved in the foreclosure. Doc. 16-1, Countrywide MTD

---

[5] As with the Note and Deed of Trust, the Court finds that the Substitute Trustee's Deed is part of the pleadings in deciding these Motions to Dismiss. Jackson refers to the Trustee's Deed several times in the Amended Petition and, considering that she has asked the Court to cancel the Trustee's Deed, it is central to her claims. *See* Doc. 1-8, Am. Pet. 33–34.

10–11. Jackson has not rebutted this fact, and has asserted only that she has "stated a claim on which relief can be granted." Doc. 19, Pl.'s Resp. ¶ 10. Based on the total absence of factual allegations specifically directed toward Countrywide, BANA, and MERS, and the information contained in the Trustee's Deed, the Court finds that Jackson has not stated a claim for lack of standing to foreclose against these three Defendants.

Regarding Jackson's lack of standing claims against BONY and Green Tree, the Court finds that she is the one who lacks standing. The thrust of Jackson's argument is that, for various reasons, the mortgage has not been properly transferred to BONY. To challenge Jackson's standing on this point, BONY and Green Tree rely on several cases finding that mortgagors cannot contest assignments of their mortgage to which they are not parties. Doc. 9, Green Tree MTD ¶¶ 17–19. Opinion is divided in the federal courts on the issue of mortgagors' standing to challenge assignments under Texas law, with cases coming down on both sides of the line. *Compare Eskridge v. Fed. Home Loan Mortg. Corp.*, No. 10-CA-285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011) ("Plaintiff has no standing to contest the various assignments as she was not a party to the assignments."), *with Miller v. Homecomings Fin., LLC*, 881 F. Supp. 2d 825, 831–32 (S.D. Tex. 2012) ("The court concludes that under Texas law homeowners have legal standing to challenge the validity or effectiveness of any assignment or chain of assignments under which a party claims the right to foreclose on their property."). Even if the Court assumes (without deciding) that, as *Miller* concluded, Texas law permits a mortgagor[6] to challenge a subsequent assignment, Jackson still lacks

---

[6] The *Miller* court's use of the word "homeowner" in describing the availability of standing could be misconstrued. The Texas cases upon which *Miller* relies speak of a *debtor's* right to assert as a defense the invalidity of an assignment. *Miller*, 881 F. Supp. 2d at 831 (quoting *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.)). A "debtor" is "[s]omeone who owes an obligation

standing because she is not a mortgagor. Furthermore, the Court has already concluded that Jackson lacks standing to assert any rights the mortgagor (Speed) might have under the Note. The Court therefore dismisses her claims that BONY and Green Tree lack standing to foreclose on the Property.

2.      Fraud

Jackson asserts two fraud claims: fraud in the concealment and fraud in the inducement. Doc. 1-8, Am. Pet. ¶¶ 64–66, 67–74. Defendants offer several grounds for dismissal, including lack of standing, failure to state a claim, failure to plead fraud with particularity, the statute of limitations, and the economic loss doctrine. *See* Doc. 9, Green Tree MTD ¶¶ 28–34; Doc. 16-1, Countrywide MTD 15–17.

i.      *Fraud in the concealment*

In this claim, Jackson alleges that Defendants concealed certain facts at the time the loan originated. Specifically, Defendants did not disclose "the fact that the Loans [sic] were securitized as well as the terms of the Securitization Agreements." Doc. 1-8, Am. Pet. ¶ 65. If Jackson had known about this securitization, she asserts, she would not have entered into the loan. *Id.* ¶ 66. By concealing this information, Defendants "intended to induce [Jackson] based on these misrepresentations and improper disclosures." *Id.* ¶ 67.

The most glaring defect in this claim is that Jackson never entered into the loan at issue—Speed did. Therefore, even if Defendants did conceal information during the origination of the mortgage, it would have deceived Speed, not Jackson. "A plaintiff lacks standing to assert a fraud

---

to another, esp. an obligation to pay money; esp., the person who owes payment or other performance of a secured obligation, whether or not that person owns or has rights in the collateral." *Debtor*, Black's Law Dictionary (10th ed. 2014). As the Court has already explained, Jackson is not an obligor under the Note. She therefore does not qualify as a "debtor" entitled to assert a claim of invalid assignment under Texas law.

claim based only on alleged misrepresentations to a third party." *Diaz-Angarita v. Countrywide Home Loans Inc.*, No. H-13-2638, 2013 WL 5603468, at *3 (S.D. Tex. Oct. 11, 2013); *see also Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976) (deciding, in the context of a fraudulent deed, that "[a] party who was not defrauded by the conveyance has not suffered an invasion of a legal right and therefore does not have standing to bring suit based on that fraud"). The Note makes clear that any misrepresentations could only have induced Speed to act, and thus Jackson lacks standing to assert her fraud in the concealment claims.

### ii.    *Fraud in the inducement*

Jackson's fraud in the inducement claims suffer largely from the same deficiency. She again insists that she was the one who entered into the loan agreement, and that she did so on the basis of Defendants' misrepresentations—this time, they allegedly represented to Jackson that they "were entitled to exercise the power of sale provision contained in the Deed of Trust," when in fact they were not, and that "they are the 'holder and owner' [sic] of the Note and the beneficiary [sic] of the Deed of Trust," when they are not. Doc. 1-8, Am. Pet. ¶¶ 68–70. The lack of specificity in these allegations makes it difficult for the Court to discern exactly what Jackson is claiming, especially because common sense would say that these particular misrepresentations could only have come after the loan had already been executed. Insofar as Jackson is claiming that the misrepresentations induced her to enter into the loan, her claims fail for want of standing for the same reason the Court dismissed her "fraud in the concealment" claims—she was not a party to the loan, and therefore could not have been fraudulently induced to enter into it.

To the extent that Jackson asserts that these misrepresentations induced her to take some other action, she has failed to state a claim upon which relief can be granted. To prevail on a fraud

claim in Texas, Jackson must show (1) Defendants made a material representation that was false; (2) they knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) they intended to induce Jackson to act upon the representation; and (4) Jackson actually and justifiably relied upon the representation and thereby suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Even if the Court could read the allegations in the Amended Petition as satisfactorily setting out the first three elements, Jackson has not explained how she relied upon Defendants' representations, apart from "enter[ing] into the loans and accept[ing] the Services as alleged herein." Doc. 1-8, Am. Pet. ¶ 70. Her statement that the purpose of the misrepresentations was to "initiat[e] the securitization process . . . , in order to profit from the sale of the Property by selling the note to sponsors who then pool the note and sell it to investors on Wall Street" is unavailing because it reveals no reliance on the supposed misrepresentation by Jackson herself. *Id.* ¶ 71. Accordingly, Jackson has failed to state a claim for fraud in the inducement.[7]

3.   Intentional Infliction of Emotional Distress

Jackson's intentional infliction of emotional distress (IIED) claims are based not on the Note, but rather upon Defendants' alleged conduct in carrying out the foreclosure. Similar to her claims for lack of standing to foreclose, then, these claims can only run against those Defendants who participated in the foreclosure. The Court has already determined that Jackson did not adequately plead that Countrywide, BANA, and MERS were involved in the foreclosure; therefore, her IIED claims against those Defendants should be dismissed.

---

[7] Because the Court has fully disposed of Jackson's fraud claims, it need not reach Defendants' other arguments for dismissal.

As to BONY and Green Tree, Jackson alleges that their attempts "to foreclose on a property in which they have no right, title, or interest . . . is so outrageous and extreme that it exceeds all bounds which are usually tolerated in a civilized community." Doc. 1-8, Am. Pet. ¶ 79. As a result of BONY's and Green Tree's bad-faith foreclosure efforts, Jackson complains that she has "suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression." *Id.* ¶¶ 81–82. In response, BONY and Green Tree contend that Jackson's pleading is insufficient because (1) she has not alleged that there are no available alternative causes of action to remedy her injuries; and (2) BONY's and Green Tree's alleged conduct does not rise to the level of outrageous behavior as a matter of law. Doc. 9, Green Tree MTD ¶¶ 38–39.

To state a claim for IIED, a plaintiff must allege (1) the defendants acted intentionally or recklessly; (2) their conduct was extreme and outrageous; (3) their actions caused the plaintiff's emotional distress; and (4) the emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). "A defendant's conduct satisfies the second element only if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous." *Hoffmann-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). IIED is, moreover, a "gap-filler tort," meant to "allow[] recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id.* at 447. "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.*

-15-

Relying on *Zeltwanger*, BONY and Green Tree argue that Jackson's IIED claims fail because she "has not pled and is unable to show that no alternative cause of action would provide a remedy." Doc. 9, Green Tree MTD ¶¶ 37–38. The Court is not fully persuaded that *Zeltwanger* was meant to impose a pleading requirement, but it need not settle that question because Jackson's allegations, as a matter of law, do not rise to the level of "extreme and outrageous" behavior. "Courts serve a gatekeeping role in adjudicating these claims by deciding initially 'whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'" *Auriti v. Wells Fargo Bank, N.A.*, No. 12-CV-0334, 2013 WL 2417832, at *8 (S.D. Tex. June 3, 2013) (quoting *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002)). "The actions of a financial institution attempting to enforce its contractual right to foreclose on a deed of trust under which the homeowner has defaulted, without more, do not meet the high bar of 'outrageous' behavior." *Id.* In this case, that is all Jackson has alleged—that BONY and Green Tree were foreclosing on the Property because Speed defaulted on the Note. Jackson does argue that the foreclosure was wrongful and that it was done in bad faith, but "even improper conduct that might in other situations constitute bad faith or invalidate a foreclosure . . . will not support an intentional infliction claim." *Id.* Accordingly, Jackson's IIED claims must be dismissed.

### 4.   Slander of Title

Jackson' slander of title claims run as follows: Defendants prepared, published, and posted the documents associated with the foreclosure (e.g., the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed) despite having "no right, title, or interest in the Property." Doc. 1-8, Am. Pet. ¶¶ 87–88. The result of Defendants' activities, according to Jackson, is that her "title to the Property has been disparaged and slandered, and there is a cloud on [her] title." *Id.* ¶ 89. Jackson also claims

to have incurred costs to clear title to the Property and that she has suffered mental anguish, anxiety, and other adverse health effects. *Id.* ¶¶ 90–91.

Once again, this claim involves only those Defendants who were involved in the foreclosure. The Court therefore dismisses the slander of title claims against Countrywide, BANA, and MERS. BONY and Green Tree contend that Jackson has failed to meet the "stringent pleading and proof requirements" for slander of title. Doc. 9, Green Tree MTD ¶ 40. The Court agrees. To make out a claim for slander of title, a plaintiff "must plead and prove the loss of a specific sale." *Pampell Interests, Inc. v. Wolle*, 797 S.W.2d 392, 395 (Tex. App.—Austin 1990, no writ) (collecting cases). Jackson has not fulfilled this requirement—nowhere does the Amended Petition mention a potential sale of the Property (other than the Trustee's Sale). Consequently, the Court finds that Jackson has failed to state a claim for slander of title against BONY and Green Tree.

5.    Quiet Title

In her quiet title claims, Jackson asserts that the Court should declare her to be the title owner of the Property and invalidate "any liens or encumbrances upon the Property created by [Defendants] or their putative predecessors." Doc. 1-8, Am. Pet. ¶ 96. The strength of her title rests simply in the fact that she has "always been, and remain[s] the lawful owner of the Property." *Id.* ¶ 94. Defendants, on the other hand, "assert[] an interest in and to the Property which [they] . . . could not lawfully acquire." *Id.* Defendants argue, *inter alia*, that Jackson has failed to state a claim to quiet title. Doc. 9, Green Tree MTD ¶¶ 43–44; Doc. 16-1, Countrywide MTD 21–22.

The elements of a quiet title claim are (1) the plaintiff has an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012,

pet. denied). Reading the Amended Petition generously, Jackson has asserted an interest in the Property. The "claim by the defendant," however, derives from the Trustee's Deed, which names only BONY and Green Tree as the purchasers of the Property. *See* Doc. 1-8, Am. Pet. ¶ 94; Doc. 9-2, Substitute Trustee's Deed 21. Jackson's claims against Countrywide, BANA, and MERS thus falter on the second element. As to the third element, Jackson is required to "prove and recover on the strength of h[er] own title, not the weakness of h[er] adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.). The Amended Petition, however, contains only the conclusory statements that Jackson is the true owner of the Property and that BONY and Green Tree could not have lawfully acquired the interest they assert. Doc. 1-8, Am. Pet. ¶ 94. This is a far cry from providing "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Jackson's quiet title claims should therefore be dismissed.

6.   Truth in Lending Act (TILA) Violations

Jackson claims that Defendants violated the TILA by "failing to provide [her] with accurate materials and disclosures required under TILA." Doc. 1-8, Am. Pet. ¶ 107. She also asserts that Defendants' alleged non-disclosure tolled the statute of limitations, and that she has a right of rescission. *Id.* ¶¶ 108–09. Defendants disagree, charging that Jackson's claim is time-barred, only the obligor under the Note can rescind it, and her factual allegations are insufficient to state a claim for relief. Doc. 9, Green Tree MTD ¶¶ 47–48; Doc. 16-1, Countrywide MTD 22–23.

Certain claims under the TILA have a one-year statute of limitations, while others (including an action for rescission) are subject to a three-year limitations period. 15 U.S.C. §§ 1635(f), 1640(e). "A claim under the TILA accrues when the loan is closed." *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, No. 10-CV-1118, 2011 WL 1540353, at *2 (N.D. Tex. Apr. 21, 2011); *see also*

*Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986). Furthermore, "[n]ondisclosure is not

a continuing violation for purposes of the statute of limitations." *Moor*, 784 F.2d at 633 (quoting *In*

*re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984) (Wisdom, J.)). This means that nondisclosure alone

does not toll the statute of limitations. Speed executed the Note in 2006; therefore, the limitations

period on a TILA claim ran in 2009 at the latest. *See* Doc. 9-2, Note 1. Because Jackson did not file

this action until March 4, 2015, any TILA claims arising out of the execution of the Note are time-

barred and should be dismissed.[8]

    7.    <u>Real Estate Settlement Practices Act (RESPA) Violations</u>

    Jackson next contends that Defendants have violated the RESPA by failing to provide

"separate fee agreements, regarding the use of AMERICA'S WHOLESALE LENDER D/B/A

COUNTRY WIDE HOME LOANS LLC Cost of Savings[] as the Index for the basis of this loan,

Disclosures of additional income due to interest rate increases," and "the proper form and procedure

in relation to the Borrower's Rights to cancel." Doc. 1-8, Am. Pet. ¶ 116. As well, Jackson argues

that unspecified payments between Defendants contravened the RESPA because they "were

misleading and designed to create a windfall." *Id.* ¶ 117. To counter these allegations, Defendants

argue that Jackson lacks standing to assert her RESPA claims, those claims are time-barred, and she

has failed to state a claim. Doc. 9, Green Tree MTD ¶¶ 49–51; Doc. 16-1, Countrywide MTD

23–24.

    A plaintiff may bring an action under the RESPA, 12 U.S.C. § 2601, *et seq.*, for violations of

sections 2605, 2607, or 2608. *Id.* § 2614. Jackson has not specified which RESPA provisions

---

[8] In light of this disposition, the Court does not reach Defendants' other arguments for dismissal.

Defendants violated; section 2608, however, regulates the conduct of "seller[s] of property." *Id.* §

2608. Jackson has not alleged that any Defendant was a seller of the Property, so her claims can only

arise under sections 2605 or 2607. Under either provision, Jackson lacks standing. Section 2605

provides protection for "borrower[s]" and "each person who applies for the loan." *See, e.g., id.* §

2605(a), (b)(1). As the Court has already explained, Jackson is neither a borrower nor a person who

applied for the loan. Likewise, section 2607 "only authorizes suits by individuals who *receive a loan*

accompanied by a kickback or unlawful referral." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763

(3d Cir. 2009) (emphasis added); *see also In re Carter*, 553 F.3d 979, 989 (6th Cir. 2009). Jackson,

however, did not receive the loan at issue. She therefore lacks standing to assert her RESPA claims.[9]

8.    Rescission

Next, Jackson asserts four grounds that purportedly justify rescinding the loan: TILA

violations, a failure to provide a "Mortgage Loan Origination Agreement," fraudulent concealment,

and public policy. Doc. 1-8, Am. Pet. ¶ 120. The whole of her argument, however, is devoted only

to the TILA and public policy grounds. *See id.* ¶¶ 121–22. With no factual allegations to support her

Mortgage Loan Origination Agreement or fraudulent concealment[10] claims, the Court finds that

Jackson has failed to state a claim for rescission on those grounds. The Court has also already

disposed of Jackson's TILA claims, including her claim for rescission. Finally, Jackson's public policy

argument consists of one sentence—"The public interest would be prejudiced by permitting the

---

[9] Because the Court has fully disposed of Jackson's claims, it need not reach Defendants' other arguments for dismissal.

[10] To the extent that Jackson's rescission argument incorporates her "fraud in the concealment" claim, the Court reiterates its conclusion that Jackson has no standing to assert that claim.

alleged contract to stand; such action would regard [sic] an unscrupulous lender." *Id.* ¶ 122. Absent from this meager statement are any mentions of legal authority or facts of consequence supporting the claim. Accordingly, the Court finds that Jackson's allegations are insufficient to show that she is entitled to rescind the loan. Alternatively, the Court concludes that, because Jackson was not a party to the Note and she has not alleged privity with Speed, she lacks standing to sue for rescission. *See Glass*, 330 S.W.2d at 536 ("As a general rule, a party to a contract or a privy therein, and he alone, is entitled to maintain a suit to cancel or rescind it.").

9.    Texas Debt Collection Practices Act (TDCA) Violations

Like her public policy argument for rescission, Jackson offers only a single statement to support her TDCA claim—that Defendants' "acts, omissions, and conduct described above constitute violations of the Texas Debt Collection Practices Act, including Tex. Fin. Cod[e] Sec. 392.304, because [Defendants] misrepresented the character, extent, or amount of a debt against a consumer." Doc. 1-8, Am. Pet. 33. Defendants argue for dismissal on the grounds that Jackson has failed to state a claim and that she lacks standing. Doc. 9, Green Tree MTD ¶ 56; Doc. 16-1, Countrywide MTD 24.

Regarding standing, the Court notes that the TDCA "provides for remedies for 'any person' adversely affected by prohibited conduct, not just parties to the consumer transaction." *Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App.—Dallas 1996, no writ); *see also McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 473–74 (5th Cir. 2015) (applying this rule). The Court finds that it need not decide the question, however, and will simply assume for the present that Jackson has standing to bring her claims. Jackson's claim mirrors the language of the TDCA, which prohibits, among other things, "misrepresenting the character, extent, or amount of a consumer debt." Tex. Fin. Code §

392.304(a)(8). This sort of allegation is a quintessential example of a "[t]hreadbare recital[] of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. As a result, Jackson has failed to state a claim under the TDCA, which merits dismissal.

      10.    <u>Request to Set Aside Foreclosure Sale and Cancel Trustee's Deed</u>

Jackson also asks the Court to set aside the foreclosure sale and cancel the Trustee's Deed. Her support for this request is that the Trustee's Deed "is void because [Defendants] did not have the standing or legal right to declare a default in payment of the Note, accelerate the maturity of the Note, or foreclose on the security interest in the Property." Doc. 1-8, Am. Pet. 33. Defendants argue that they acted within their authority in carrying out the foreclosure and that Jackson lacks standing to contest the assignments of the mortgage. Doc. 9, Green Tree MTD ¶¶ 57–59.

"A foreclosure sale not conducted in accordance with the terms of the deed of trust gives rise to a cause of action to set aside the sale and the resulting trustee's deed." *Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 593–94 (Tex. App.—Dallas 2012, no pet.) (citing *Univ. Sav. Ass'n v. Springwood Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1983)). The gravamen of Jackson's argument is that Defendants acted outside the authority created by the Note and Deed of Trust. But the Court has already decided that Jackson does not have standing to enforce the Note or the rights it creates. Moreover, Jackson's arguments contesting Defendants' authority to foreclose on the Property are meritless. Jackson contends that (1) the Note could not have been properly transferred because it was not endorsed or physically delivered; (2) MERS lacked the authority to assign the mortgage to BONY; and (3) the assignment split the Note and Deed of Trust, and only the holder of the Note is entitled to foreclose. Doc. 1-8, Am. Pet. ¶¶ 46–63. The Court considers each argument in turn.

As to Jackson's first argument, it is apparent from the Note itself that Countrywide did

indorse it. *See* Doc. 9-2, Note 3. The indorsement is blank, but this does not invalidate the Note; rather, a blank-indorsed promissory note is enforceable by the party to whose possession—constructive or actual—it is delivered. *See Nicholson v. Washington Mut., F.A.*, No. 13-00-394-CV, 2001 WL 1002418, at *2 (Tex. App.—Corpus Christi 2001, no pet.) (not designated for publication). Jackson's assertion that a physical transfer of the Note is required is thus not accurate. The assignment unambiguously transfers the mortgage from MERS to BONY, and the Trustee's Deed names BONY as the "Noteholder." Doc. 9-2, Corporation Assignment of Deed of Trust/Mortgage 17;[11] Doc. 9-2, Trustee's Deed 23. BONY therefore at least had constructive possession of the Note, which is sufficient under Texas law to enforce an instrument indorsed in blank.

Jackson's second argument fares no better. Federal and state courts have both recognized that MERS has authority to assign mortgages, as long as it is granted that power in the deed of trust. *See, e.g., L'Amoreaux v. Wells Fargo Bank, N.A.*, 755 F.3d 748, 750 (5th Cir. 2014); *Morlock, L.L.C. v. Nationstar Mortg., L.L.C.*, 447 S.W.3d 42, 46–47 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The Deed of Trust here is materially indistinguishable from the one in *Morlock*. In that case, the borrower executed a deed of trust naming MERS as "the beneficiary of that instrument solely as nominee for" the lender and its successors and assigns.[12] *Morlock*, 447 S.W.3d at 43. The borrower argued that MERS lacked authority to transfer the mortgage, but the Texas Court of Appeals

---

[11] As with the other attachments to the Motions, the Court finds that the assignment is referenced in Jackson's complaint and is central to her claims. It is therefore part of the pleadings.

[12] The Deed of Trust contains virtually the same language—it designates MERS as "[t]he beneficiary of this Security Instrument . . . (solely as nominee for Lender and Lender's successors and assigns)." Doc. 9-2, Deed of Trust 5.

disagreed—it found that the deed of trust expressly conveyed that authority on the basis of the following provision:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including, but not limited to, releasing and canceling this Security Interest.

*Id.* at 46–47. The Deed of Trust in the instant case contains not only similar, but identical language. *See* Doc. 9-2, Deed of Trust 6. The Court therefore concludes that MERS had the authority to assign the mortgage in this case.

Finally, courts have roundly rejected Jackson's "split the note" argument. Under Texas law, "a mortgage on real estate follows the promissory note it secures." *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 759 (N.D. Tex. 2013); *see also Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013) ("The 'split-the-note' theory is therefore inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned. The party to foreclose need not possess the note itself."); *J.W.D., Inc. v. Fed. Ins. Co.*, 806 S.W.2d 327, 330 (Tex. App.—Austin 1991, no writ) (collecting cases). Therefore, "someone other than the holder of the original note may lawfully foreclose on the security interest." *Preston*, 931 F. Supp. 2d at 759.[13]

In sum, Jackson's claim to set aside the foreclosure sale rests entirely on discredited legal theories. Accordingly, the Court will neither set aside the foreclosure sale nor cancel the Trustee's Deed.

---

[13] It is not clear that this rule applies in this case, as it appears that BONY possesses both the Note and the Deed of Trust. Even assuming that is not the case, however, Jackson's argument still fails as a matter of law.

11.    <u>Temporary Restraining Order and Injunctive Relief</u>

In her request for a temporary restraining order (TRO) and injunctive relief, Jackson asserts

that the pendency of her lawsuit defeats the jurisdiction of the Justice Court and County Court at

Law of Johnson County to award possession of the Property in a forcible detainer action. Doc. 1-8,

Am. Pet. 34. Jackson acknowledges that a forcible detainer action does not determine title to the

Property, but insists that her case falls into an exception that precludes a determination of possession

prior to adjudicating the question of title—namely, that the "issues of title and possession are

intertwined." *Id.* Defendants argue that, because Jackson's claims fail as a matter of law, she is not

entitled to a TRO or injunctive relief. Doc. 9, Green Tree MTD ¶¶ 60–62; Doc. 16-1, Countrywide

MTD 24–25.

To obtain a TRO or a preliminary injunction, Jackson must show (1) a substantial likelihood

of success on the merits; (2) a substantial threat of immediate and irreparable harm for which she

has no adequate remedy at law; (3) that greater injury will result from denying the TRO or

preliminary injunction than from its being granted; and (4) that a TRO or preliminary injunction

will not disserve the public interest. *Fed. Home Loan Mortg. Corp. v. American Home Mortg. Corp.*,

No. 07-CV-1335, 2007 WL 2228619, at *2 (N.D. Tex. Aug. 3, 2007) (citing *Clark v. Prichard*, 812

F.2d 991, 993 (5th Cir. 1987)). "The standard for issuing a permanent injunction is 'essentially the

same' as for a preliminary injunction." *Nat'l Solid Wastes Mgmt. Ass'n v. City of Dallas*, 903 F. Supp.

2d 446, 458 (N.D. Tex. 2012) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546

n.12 (1987)). Instead of showing a likelihood of success on the merits, however, a plaintiff must show

actual success on the merits to obtain a permanent injunction. *Id.*

Jackson's requests all fail on the very first element. Because the Court has already disposed

of all of her claims, she cannot show *any* likelihood of success on the merits, much less a substantial one. Likewise, because the Court is dismissing her claims, Jackson will be unable to show actual success on the merits. The Court therefore denies the requests for a TRO and preliminary injunction and dismisses Jackson's claim for a permanent injunction. *See Speed v. America's Wholesale Lender*, No. 14-CV-3425, 2014 WL 4755485, at *2 (N.D. Tex. Sept. 24, 2014).

12.    Declaratory Relief[14]

The final issue for the Court to address is Jackson's request for a declaratory judgment. Jackson seeks the following declaratory relief: (1) "a judicial determination of the rights, obligations and interest of the parties with regard to the [P]roperty"; (2) "a determination of the validity of the Trust Deed[] as of the date the Note[] w[as] assigned without a concurrent assignation of the underlying Trust Deed[]"; (3) "a determination of the validity of the NOD (Notice of Default)"; and (4) "a determination of whether any Respondents have authority to foreclose on the property." Doc. 1-8, Am. Pet. ¶¶ 102–05. Defendants aver that there is an insufficient factual and legal foundation to support a declaratory judgment. Doc. 9, Green Tree MTD ¶¶ 45–46; Doc. 16-1, Countrywide MTD 25–26.

As an initial matter, the Court acknowledges that Jackson has not stated whether she seeks a declaratory judgment under Texas' Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.003, or the federal Declaratory Judgment Act, 28 U.S.C. § 2201. The fact that she filed in state court points to the former. This omission is ultimately immaterial, though, because

---

[14] In the Amended Petition, Jackson lists this cause of action seventh. Because declaratory relief is derivative of the existence of another cause of action between the parties, however, the Court analyzes it last (i.e., after it has addressed all of Jackson's purported causes of action). *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950).

"[w]hen a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act." *Redwood Resort Props., LLC v. Homes Co., Ltd.*, No. 06-CV-1022, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) (citing *i2 Techs. US, Inc. v. Lanell*, 02-CV-0134, 2002 WL 1461929, at *7 n.5 (N.D. Tex. July 2, 2002)). The Court therefore analyzes Jackson's claim under the federal Declaratory Judgment Act (DJA).

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The requirement of an "actual controversy" derives from the prohibition against federal courts issuing advisory opinions. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*; *Adams v. McIlhany*, 764 F.2d 294, 299 (5th Cir. 1985).

The declarations Jackson seeks are entirely derivative of her other claims; that is, her declaratory judgment requests rely on the same arguments that the Court has already considered. The Court therefore concludes that, because it has dismissed all of Jackson's claims, there is no longer a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Golden*, 394 U.S. at 108. Furthermore, Jackson seeks the same relief through declaratory judgment that she does through her other claims—namely, that the Court invalidate the foreclosure sale and find that she holds the title to the Property. In such a situation,

where a "[p]laintiff[] would get nothing from a declaratory judgement that [she] would not get from prevailing on [her other] . . . claims," declaratory judgment is not appropriate. *See Scritchfield v. Mut. of Omaha Ins. Co.*, 341 F. Supp. 2d 675, 682 (E.D. Tex. 2004).

C.    *Leave to Amend*

Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted" (internal alterations omitted)).

Jackson has not requested leave to amend. In such a circumstance, a district court is not required to grant leave. *See Garrett v. Celanese Corp.*, 102 F. App'x 387, 388 (5th Cir. 2004). In this case, the Court is of the opinion that the defects in Jackson's pleading are incurable. She has no standing to bring many of her claims, and the rest of her claims are either time-barred or so deficiently pled that the Court cannot conclude that permitting amendment would be worthwhile.

It also appears that Jackson may be aware of these shortcomings. In a case previously filed in the Northern District of Texas, Terry Speed contested the authority of BONY, MERS, and

Countrywide (among others) to foreclose on his property.[15] *Speed*, 2014 WL 4755485, at *1. The Court noticed, however, that the documents were signed not by Speed, but by Lakiesha Jackson Speed, who claimed to be acting on Speed's behalf. *Id.* at *2. Defendants assert, and Jackson does not deny, that Jackson and Lakiesha Jackson Speed are one and the same. *See* Doc. 9, Green Tree MTD ¶ 5; Doc. 16-1, Countrywide MTD 8 n.7. Speed was ordered to refile the case, this time signing the pleadings and other documents himself. *Speed*, 2014 WL 4755485, at *3. When he failed to comply, the Court dismissed the case without prejudice. *Speed v. America's Wholesale Lender*, No. 14-CV-3425, 2014 WL 6487291, at *1 (N.D. Tex. Nov. 19, 2014).

Jackson's response to this turn of events appears to have been to file more or less the same case in a different court under her own name (or at least a variant of it). To her credit, Jackson identified her standing problem and attempted to circumvent it by pleading that she was a party to the Note, an assertion that is demonstrably false. The Court is not inclined to indulge this kind of gamesmanship by allowing Jackson to further prolong this litigation so she can fruitlessly amend her complaint. Accordingly, the Court concludes that the proper course of action is to deny Jackson leave to amend.

D.    *Additional Allegations in Jackson's Response*

In her response to the Motions, Jackson states that she "sued Defendants for violations of FDCPA and can show proof thereof," although the Amended Petition contains no such claim. Doc. 19, Pl.'s Resp. ¶ 2. She also asserts claims against a previously unnamed defendant, Angel Reyes & Associates. *See id.* at ¶¶ 2, 10–11. It is improper to raise new claims on a response to a motion to

---

[15] The property at issue in that case was also located at 1116 Melrose Drive, Burleson, Texas. Compl. ¶ 8, *Speed v. Bank of New York*, No. 14-CV-3425 (N.D. Tex. Sept. 23, 2014), ECF No. 3.

dismiss. *See Renfrow v. CTX Mortgage Co., Inc.*, No. 11-CV-3132, 2012 WL 3582752, at *4 (N.D. Tex. Aug. 20, 2012) (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)). The Court therefore did not consider Jackson's additional allegations in deciding this motion.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss in their entirety and **ORDERS** that Jackson's claims be **DISMISSED with prejudice**.

**SO ORDERED.**

**SIGNED: October 9, 2015.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE